## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| SAMUEL BRANCH, | : | |
| Plaintiff, | : | CASE NO. 3:24-cv-00536 (MPS) |
| | : | |
| v. | : | |
| | : | |
| WARDEN GUADARRAMA, et al., | : | |
| Defendants. | : | JULY 9, 2024 |
| | : | |

_____

### FURTHER REVIEW ORDER

Plaintiff Samuel Branch, an unsentenced inmate at MacDougall-Walker Correctional Institution in Suffield, Connecticut, filed this case under 42 U.S.C. § 1983. He names Warden Jesus Guadarrama and DOC Commissioner Angel Quiros as defendants. The plaintiff alleged in his original complaint that he slipped and fell on water leaking from the ceiling near the prison showers, injuring his back, neck, and side. ECF No. 1 at 3. The plaintiff maintained in his original complaint that Warden Guadarrama was negligent for failing to fix the leaking ceiling, put up warning signs, or place floor mats on the floor. *Id.* The plaintiff sought monetary damages and prospective injunctive relief. *Id.* at 5.

## I.    Background

### A. Initial review order

The Court dismissed the plaintiff's complaint in its initial review order. ECF No. 13 at 7. The Court determined the defendants could not be sued for monetary damages in their official capacity because such claims were barred by the Eleventh Amendment. *Id.* at 3. The Court also determined the defendants could not be sued in their individual capacity because the plaintiff

failed to allege the defendants' personal involvement in the alleged constitutional violation. *Id.* at 3–4. The Court lastly concluded that even if the plaintiff could sue the defendants, he did not state a cognizable Fourteenth Amendment claim. *Id.* at 6–7. The Court permitted the plaintiff to file an amended complaint to address the defects described in the Court's order. *Id.* at 7.

**B. <u>Amended complaint</u>**

The plaintiff filed an amended complaint against the same two defendants, suing both in their official and individual capacity. ECF No. 14 at 1. The plaintiff continues to seek monetary damages and prospective injunctive relief. *Id.* The plaintiff maintains in his amended complaint that he slipped and fell on a wet floor in C1 Block, causing injuries to his neck, back, and side. *Id.* ¶ 1. These injuries required physical therapy and the use of a cane for two months. *Id.*

The plaintiff alleges the floor was wet because of a "failed roof system, deteriorated sealants, tar, membranes, and corroded drain fixtures [and] associated piping" within the cell block. ECF No. 14 ¶ 2. The plaintiff maintains that the roof deteriorated over time, but that the leak was documented long before he slipped and fell. *Id.* ¶ 3. There were four separate leaks in the ceiling. *Id.* ¶ 4. A bucket was used to catch water from one of the leaks. *Id.* The water from the roof leaked into ceiling lights, electrical systems, and fire protection components, causing mold in the ceiling. *Id.* ¶ 6. There were no rubber mats or warning signs displayed near the wet floor area by the shower. *Id.* ¶ 4.

The plaintiff claims that a lack of proper training and procedures led to the wet floor on December 17, 2023, when he slipped and fell. ECF No. 14 at ¶¶ 1, 4. He maintains the "30 [-]year[-]old roofing system" was "willfully neglected/ignored by w[a]nton reckless mentality of those holding custody of block residents." *Id.* ¶ 7. The plaintiff alleges that the leaking roof

caused a hazardous work environment for employees, along with OSHA safety issues. *Id.* ¶ 8. The plaintiff claims discovery will show "defendants' culpability through intentional, reckless, personal, harmful, deliberate conduct, course of conduct, or omission of reasonable action, care, inspections, diligence, in maintaining state facility, so properly designed for housing of prisoners." *Id.* at 4–5.

## II.   Discussion

The Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(a)–(b). This requirement applies to all prisoner filings regardless of whether the prisoner pays the filing fee. *Nicholson v. Lenczewski*, 356 F. Supp. 2d 157, 159 (D. Conn. 2005) (citing *Carr v. Dvorin*, 171 F.3d 115 (2d Cir. 1999) (per curiam)). Here, the plaintiff is proceeding *in forma pauperis.*

The Court has thoroughly reviewed all factual allegations in the amended complaint and conducted further review of the allegations therein pursuant to 28 U.S.C. § 1915A(a). Based on this further review, the Court orders as follows.

### A.   Analysis of Claim

"[T]he submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they *suggest.*'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quotation omitted; emphasis original). While the Court initially interpreted Plaintiff's claim as a negligence claim, *see* ECF No. 13 at 6, which is not cognizable

in a § 1983 action, *see Davis v. Reilly*, 324 F. Supp.2d 361, 367 (E.D.N.Y. 2004), the additional

facts in the amended complaint now suggest a conditions of confinement claim.

The Eighth Amendment requires prison officials to provide "humane conditions of

confinement," which include "'tak[ing] reasonable measures to guarantee the safety of the

inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation and citations omitted).

Because the plaintiff is a pre-trial detainee,[1] though, his claim "of unconstitutional conditions of

confinement [is] governed by the Due Process Clause of the Fourteenth Amendment, rather than

the Cruel and Unusual Punishment Clause of the Eighth Amendment." *Darnell v. Pineiro*, 849

F.3d 17, 29 (2d Cir. 2017) (citation omitted).

A pretrial detainee who claims deliberate indifference to his safety must show an

objective risk of serious harm, *id*. at 30, but—unlike for an Eighth Amendment claim—need not

necessarily show that a charged official was subjectively aware of the risk of harm: "[T]o

establish a claim for deliberate indifference to conditions of confinement under the Due Process

Clause of the Fourteenth Amendment, the pretrial detainee must prove that the defendant-official

acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable

care to mitigate the risk that the condition posed to the pretrial detainee even though the

defendant-official knew, or should have known, that the condition posed an excessive risk to

---

[1] DOC's website lists the plaintiff as an unsentenced inmate. *See Department of Correction Inmate Information Search*, http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=416973 (last visited July 3, 2024). The Court may take judicial notice of this website. *See*, *e.g*., *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *United States v. Rivera*, 466 F. Supp. 3d 310, 313 (D. Conn. 2020) (taking judicial notice of BOP inmate locator information); *Ligon v. Doherty*, 208 F. Supp. 2d 384, 386 (E.D.N.Y. 2002) (taking judicial notice of state prison website inmate locator information). Unsentenced inmates are considered pretrial detainees. *See Ibbison v. Quiros*, No. 3:22-CV-01163 (SVN), 2023 WL 1766440, at *10 (D. Conn. Feb. 3, 2023) (considering an unsentenced prisoner a pretrial detainee).

health or safety." *Id*. at 35. "A detainee must prove that an official acted intentionally or recklessly, and not merely negligently." *Id*.

The plaintiff alleges he slipped and fell on a wet floor in C1 Block, causing injuries to his neck, back, and side. ECF No. 14 ¶ 1. He attributes the wet floor to a "failed roof system, deteriorated sealants, tar, membranes, and corroded drain fixtures [and] associated piping" within the cell block. *Id.* ¶ 2. The plaintiff maintains that the roof deteriorated over time, and that the leak was documented long before he slipped and fell. *Id.* ¶ 3. Plaintiff claims that defendants willfully neglected or ignored the roof leak. *Id. ¶* 7.

"District courts in this Circuit have repeatedly held that, standing alone, a claim that a prisoner fell on a slippery floor and injured himself fails to satisfy the first prong of a conditions-of-confinement claim." *Bodoh v. Smith*, No. 20-CV-8593 (LLS), 2021 WL 795807, at *2 (S.D.N.Y. Mar. 1, 2021) (collecting cases). However, the plaintiff's allegation that he fell on a slippery floor does not stand alone—it is coupled with an allegation that prison officials ignored a roof leak that was documented long before he slipped and fell on that floor. ECF No. 14 ¶ 3. The roof leaked in four different places, one of which required a bucket to collect the falling water. *Id.* ¶ 4. According to the plaintiff, the leak was so serious that water seeped into ceiling lights, electrical systems, and fire protection components, causing mold in the ceiling. *Id. ¶* 6. These allegations suggest that the leak was longstanding.

Even under the Eighth Amendment's "more exacting standard," *Vazquez v. City of New York,* No. 21CIV1573PAEVF, 2022 WL 17370156, at *10 (S.D.N.Y. Dec. 2, 2022), the Supreme Court has held that a prisoner's long-term exposure to environmental risk can constitute a deliberate indifference claim. *Helling v. McKinney*, 509 U.S. 25, 35 (1993) (holding that

prisoner had alleged an Eighth Amendment deliberate indifference claim because prison officials exposed him to health risks by subjecting him to environmental tobacco smoke). The Second Circuit has recognized that "slip-and-fall claims are seldom viewed as rising to 'constitutional dimension,'" but could if "exceptional circumstances" elevated the danger of a condition beyond that typically "presented by a slippery sidewalk or a wet floor." *See McCray v. Lee,* 963 F.3d 110, 115, 120 (2d Cir. 2020) (observing that inmate had not made "any claims of exceptional circumstances that would elevate the Green Haven yard conditions beyond the typical level of danger presented by a slippery sidewalk or a wet floor.").

The persistently dangerous condition of the floor over time elevates the wet floor here to an "exceptional circumstance." *See, e.g.*, *Abernathy v. Comm'r of Correction*, No. 3:20-CV-00628 (VAB), 2021 WL 1240018, at *7 (D. Conn. Apr. 2, 2021) (noting allegations that correctional staff ignored waxed wet floor that was extremely slippery suggested an exceptional circumstance involving a violation of contemporary standards of decency). *See also Helling*, 509 U.S. at 36 ("[T]he prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate.").

Prison officials' awareness of the risk that the persistently wet floor presented to inmates "may be proven 'from the very fact that the risk was obvious.'" *Spavone v. New York State Dep't of Corr. Servs*., 719 F.3d 127, 138 (2d Cir. 2013) (citing *Farmer,* 511 U.S. at 842). The Court can infer from the presence of the bucket used to collect water falling through the ceiling, ECF No. 14 ¶ 4, that the risk was obvious to prison officials. Prison officials recklessly failed to act with reasonable care to mitigate this obvious risk. "'[R]ecklessness' can be defined subjectively (what a person actually knew, and disregarded), or objectively (what a reasonable person knew,

6

or should have known)." *See Farmer*, 511 U.S. at 836–37. Using a bucket to collect falling water from the ceiling adequately shows, at this stage, that prison officials at least should have known, if not actually knew, the risk that standing water on the floor could present to inmates. Accordingly, the plaintiff has stated a Fourteenth Amendment deliberate indifference claim sufficient to proceed for further development of the record.

      **B. <u>Requests for damages</u>**

      The Court concluded in its initial review order that the defendants could not be sued for monetary damages in their official capacity. ECF No. 13 at 3 (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)); *Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002)). The plaintiff has failed to allege any facts in his amended complaint showing that the defendants are subject to a suit for monetary damages in their official capacity. Accordingly, any claims for monetary damages against defendants in their official capacity must be dismissed under 28 U.S.C. § 1915A(b)(2).

      The Court also concluded in its initial review order that defendants could not be sued for monetary damages in their individual capacity because the defendants were not personally involved. *See* ECF No. 13 at 3–4 (citing *Jones v. Nassau Cnty. Sheriff Dep't,* 285 F. Supp. 2d 322, 325–26 (E.D.N.Y. 2003)). Both Warden Guadarrama and Commissioner Quiros are supervisory officials. Thus, the plaintiff must allege that these supervisory officials, by their own conduct and not by reason of their supervision of others, committed the constitutional violation. *Tangreti v. Bachmann,* 983 F.3d 609, 619 (2d Cir. 2020). This requires an allegation that the defendants "personally knew of and disregarded an excessive risk to [the plaintiff's] health or safety." *Id.* (citation omitted; bracketed material substituted).

"Personal involvement," the Second Circuit has said, means either direct participation, such as "personal participation by one who has knowledge of the facts that rendered the conduct illegal," or indirect participation, such as "ordering or helping others to do the unlawful acts." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (citation omitted). To "hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability." *Tangreti*, 983 F.3d at 620. Plaintiff also may not hold a defendant liable for a constitutional violation committed by another defendant solely based on his or her "high position of authority in the prison system." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994).

The plaintiff has not adequately alleged that Commissioner Quiros had personal involvement in the alleged constitutional violation. There is no allegation that Commissioner Quiros works in the MacDougall-Walker Correctional Institution or would otherwise be aware of a roof leak within one of several prisons that he oversees as DOC Commissioner. He cannot be held liable based solely on his "high position of authority in the prison system." *Wright*, 21 F.3d at 501. Accordingly, the plaintiff's claim for damages against Commissioner Quiros must be dismissed under 28 U.S.C. § 1915A(b)(2).

Allegations of Warden Guadarrama's personal involvement are similarly thin, but a prison warden is likely the most appropriate official to sue concerning the living conditions of the prisoners he oversees. *See, e.g., Rogers v. Lamont*, No. 3:21-CV-1722 (OAW), 2022 WL 16855969, at *4 (D. Conn. Nov. 10, 2022) (where plaintiff sufficiently alleged warden and deputy warden's personal involvement in conditions of confinement claim because they directly oversaw prison facility operations). As the person overseeing the conditions of confinement at

8

MacDougall-Walker Correctional Institution, Warden Guadarrama plausibly would have been aware of a longstanding roof leak that affected ceiling lights, electrical systems, and fire protection components, ECF No. 14 ¶ 6, caused a hazardous work environment for his employees, and created OSHA safety issues, *id. ¶* 8, in the prison. Even if the evidence eventually demonstrates that Warden Guadarrama is not the responsible person, he is the appropriate party to this action at this stage in the litigation. *See Davis v. Kelly*, 160 F.3d 917, 921 (2d Cir. 1998) ("[C]ourts have pointed out the appropriateness of maintaining supervisory personnel as defendants in lawsuits stating a colorable claim until the plaintiff has been afforded an opportunity through at least brief discovery to identify the subordinate officials who have personal liability."). The Court therefore declines to dismiss the plaintiff's claim against Warden Guadarrama for lack of personal involvement.

### C. <u>Request for injunctive relief</u>

The plaintiff also seeks injunctive relief. ECF No. 14 at 1. While the plaintiff cannot sue defendants in their official capacity for damages, *see supra*, the Eleventh Amendment does not preclude suits against state officials acting in their official capacity that seek prospective injunctive relief. *See Ex parte Young,* 209 U.S. 123, 155–56 (1908). Moreover, plaintiff's claim for injunctive relief does not require personal involvement, as required for a damages claim. *See Smith v. Muccino,* 223 F.Supp.2d 396, 403 (D. Conn. 2002) ("[P]ersonal involvement is not a prerequisite to injunctive relief, and such relief may be had against officers in their official capacity."). Accordingly, the plaintiff's official capacity claims for prospective injunctive relief against Commissioner Quiros and Warden Guadarrama may proceed.

**D. Exhaustion**

Lawsuits brought by inmates are governed by 42 U.S.C. § 1997e. Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This subsection applies to all claims regarding prison life. *See Porter v. Nussle,* 534 U.S. 516, 532 (2002). Section 1997e requires exhaustion of any available administrative remedies, regardless of whether they provide the relief the inmate seeks. *See Booth v. Churner,* 532 U.S. 731, 741 (2001). A claim is not exhausted until the inmate complies with all administrative deadlines and procedures. *See Woodford v. Ngo,* 548 U.S. 81, 90 (2006). Informal efforts to put prison officials on notice of inmate concerns do not satisfy the exhaustion requirement. *See Marcias v. Zenk,* 495 F.3d 37, 43 (2d Cir. 2007). If the deadline to file a grievance has passed, an unexhausted claim is barred from federal court. *See Woodford,* 548 U.S. at 95.

The plaintiff suggests in his amended complaint that he did not exhaust his administrative remedies before filing suit because "[i]nternal administrative departmental complaint processes are under direct control of the defendants, incapable of providing the requested relief." ECF No. 14 at 3.  However, an inmate may be excused from the exhaustion requirement only if administrative remedies are unavailable.  *Ross v. Blake*, 578 U.S. 632, 642 (2016).  Availability means "capable of use for the accomplishment of a purpose," and "that which is accessible or may be obtained." *Id.*  In *Ross*, the Supreme Court identified three circumstances in which prison remedies are not "available":  (1) when the administrative procedure "operates as a simple dead end—with officers unable or … unwilling to provide any relief to aggrieved inmates"; (2)

10

when the administrative remedy system is "so opaque that it becomes, practically speaking, incapable of use," and "no ordinary prisoner can discern or navigate it"; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643-44. Plaintiff's allegation that the "[i]nternal administrative departmental complaint processes are under direct control of the defendants," ECF No. 14 at 3, does not fall within those three categories and does not otherwise suggest that administrative remedies were unavailable. Therefore, the plaintiff does not allege facts suggesting that he should be excused from exhausting his administrative remedies before filing suit.

The Court may dismiss a § 1983 complaint because a plaintiff failed to exhaust his administrative remedies, but it cannot do so without affording the plaintiff notice and an opportunity to be heard. *Snider v. Melindez*, 199 F.3d 108, 112 (2d Cir. 1999). Thus, while it appears from the face of the plaintiff's complaint that he may have failed to exhaust his administrative remedies before filing suit, *see* ECF No. 14 at 3, the Court reserves judgment on this issue until the defendants have had an opportunity to raise the plaintiff's failure to exhaust as an affirmative defense (one that may require some discovery) and the plaintiff has been given an opportunity to respond.

III.    <u>Conclusion</u>

The plaintiff's Fourteenth Amendment conditions of confinement claim for damages will proceed against Warden Guadarrama in his individual capacity. The plaintiff's Fourteenth Amendment conditions of confinement claim for prospective injunctive relief will proceed

against Commissioner Quiros and Warden Guadarrama in their official capacity. The plaintiff's

remaining claims for damages against these defendants are dismissed.

The Court enters the following additional orders.

(1)      **The Clerk shall** contact the Department of Correction Office of Legal Affairs to

ascertain a current service address for Defendants, mail a waiver of service of process request

packet containing the Complaint and this Order to each defendant at the address provided within

**twenty-one (21) days** of this Order, and report to the court on the status of the waiver request on

the thirty-fifth day after mailing. If any defendant fails to return the waiver request, the Clerk

shall arrange for in-person service by the U.S. Marshals Service on the defendant in his

individual capacity and the defendant shall be required to pay the cost of such service.

(2)      **The Clerk shall** send the plaintiff a copy of this Order.

(3)      **The Clerk shall** send a courtesy copy of the Complaint and this Order to the

Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4)      The defendants shall file their response to the complaint, either an answer or

motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If they choose

to file an answer, they shall admit or deny the allegations and respond to the cognizable claim

recited above. They also may include all additional defenses permitted by the Federal Rules.

(5)      Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be

completed within **seven months (210 days)** from the date of this order. Discovery requests need

not be filed with the court.

(6)      All motions for summary judgment shall be filed within **eight months (240 days)**

from the date of this order.

(7)      Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8)      If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address. The plaintiff should also notify the defendants or the attorney for the defendants of his new address.

(9)      The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. The plaintiff is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendants' counsel by regular mail.

(10)      The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to the plaintiff.

SO ORDERED this 9th day of July 2024 at Hartford, Connecticut.

_____/s/_____
Michael P. Shea
United States District Judge

13