UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SAMUEL BRANCH, : | |
|     Plaintiff, : | CASE NO. 3:24-cv-00536 (MPS) |
| : | |
| v. : | |
| : | |
| WARDEN GUADARRAMA, et al., : | |
|     Defendants. : | January 5, 2026 |

**MEMORANDUM OF DECISION ON DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Samuel Branch, an inmate imprisoned at MacDougall-Walker Correctional Institution ("MacDougall-Walker"),[1] filed an amended complaint under 42 U.S.C. § 1983 naming MacDougall-Walker warden Jesus Guadarrama and Department of Correction ("DOC") Commissioner Angel Quiros as defendants. Am. Compl., ECF No. 14 at 3. The plaintiff asserted in his amended complaint that he sustained injuries after slipping and falling on a wet floor that was caused by a leaking roof. *Id.* ¶¶ 1–3. The Court permitted the plaintiff to pursue damages from Warden Guadarrama and injunctive relief from Warden Guadarrama and Commissioner Quiros on a Fourteenth Amendment conditions-of-confinement claim. *See* IRO Am. Compl., ECF No. 15 at 11–12.

The defendants have now filed a motion for summary judgment, maintaining that the plaintiff did not exhaust his administrative remedies, that the Fourteenth Amendment claim fails on the merits, and that the defendants are entitled to qualified immunity. *See* Def. MSJ, ECF No. 29 at 1. The defendants have submitted a memorandum of law in support of their motion (ECF

---

[1] The plaintiff is currently detained at MacDougall-Walker on a federal detainer. DOC, *Offender Information Search*, https://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=416973 (last visited January 5, 2026). The Court may take judicial notice of content on this website. *See*, *e.g*., *Taveras v. Semple*, No. 3:15CV00531(SALM), 2023 WL 112848, at *1 n.1 (D. Conn. Jan. 5, 2023) (taking judicial notice of Connecticut DOC offender information search).

No. 29-1), a Local Rule 56(a)(1) statement of material facts (ECF No. 29-2), and supporting affidavits and evidence (ECF Nos. 29-3, 29-4). The plaintiff has filed a response. Resp. ECF No. 34.

After thoroughly considering the materials submitted by the parties, the Court will grant the defendants' motion for summary judgment for reasons stated below.

**I.    FACTS**

Local Rule 56(a)(1) requires a party moving for summary judgment to file "a concise statement of each material fact as to which the moving party contends there is no genuine issue to be tried." D. Conn. L. Civ. R. 56(a)(1). Local Rule 56(a)(2) requires the party opposing summary judgment to submit a Local Rule 56(a)(2) statement containing separately numbered paragraphs corresponding to the Local Rule 56(a)(1) statement and indicating whether the opposing party admits or denies the facts set forth by the moving party. D. Conn. L. Civ. R. 56(a)(2). Each denial in the Local Rule 56(a)(2) statement must include a specific citation to an affidavit or other admissible evidence. D. Conn. L. Civ. R. 56(a)(3).

The defendants informed plaintiff of this requirement. *See* ECF No. 29-5 ("Notice to Self-Represented Litigant Concerning Motion for Summary Judgment as Required by Loc. R. of Civ. Pro. 56(b)"). The plaintiff submitted a response to the motion for summary judgment that admits or denies the facts alleged in the Local Rule 56(a)(1) statement. *See* Resp., ECF No. 34 at 2–4. But these denials in the plaintiff's Local Rule 56(a)(2) statement are not "followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial, or (2) other evidence that would be admissible at trial," as required. D. Conn. L. Civ. R. 56(a)(3).

That the plaintiff "is unrepresented does not excuse him from complying with the Court's

2

procedural and substantive rules." *Rashid v. Kurtulus*, No. 23-CV-722 (VDO), 2024 WL 4111610, at *1 (D. Conn. Sept. 6, 2024). Thus, the facts contained in the defendants' Local Rule 56(a)(1) statement, where supported by evidence of record, are deemed admitted. *See* D. Conn. L. Civ. R. 56(a)(3) ("Failure to provide specific citations to evidence in the record as required by this Local Rule may result in the Court deeming admitted certain facts that are supported by the evidence in accordance with Local Rule 56(a)1, or in the Court imposing sanctions, including … an order granting the motion if the motion and supporting materials show that the movant is entitled to judgment as a matter of law.").

The relevant facts described below are taken from the defendants' Local Rule 56(a)(1) statement, *see* ECF No. 29-2, and the plaintiff's verified amended complaint, ECF No. 14, where noted. *Otero v. Purdy*, No. 3:19-CV-01688 (VLB), 2021 WL 4263363, at *1 n.1 (D. Conn. Sept. 20, 2021) (indicating that "[t]he Court may also consider the allegations of the verified complaint in reviewing the motion for summary judgment").

The plaintiff was housed in the Walker building in the MacDougall-Walker complex[2] when he slipped and fell while exiting the shower on December 17, 2023. Def. L. R. 56(a)(1), ECF No. 29-2 ¶ 1. The plaintiff had not noticed water on the floor when he entered or exited the shower. *Id.* ¶¶ 3, 4. The plaintiff first noticed the water, "which was a small area the size of a tangerine," after he fell on the floor. *Id.* ¶ 5. The plaintiff alleged in his amended complaint that the water came from a "failed roofing system, deteriorated sealants, tar, membranes, and corroded drain fixtures [and] associated piping[.]" Am. Compl., ECF No. 14 ¶ 2.  But the plaintiff "never mentioned any issues with the roof leaking to the officers who responded to the

---

[2] MacDougall-Walker is "comprised of two separate buildings – MacDougall and Walker." Def. L. R. 56(a)(1), ECF No. 29-2 ¶ 14.

fall," Def. L. R. 56(a)(1), ECF No. 29-2 ¶ 6, nor had the plaintiff "complained about any issues with the roof to Warden Guadarrama or to any officers in the unit" before he fell. *Id.* ¶ 9. The officers who responded to assist the plaintiff after he fell "didn't see any water where [Plaintiff] claims to have fallen." *Id.* ¶ 6. But "even though it was reported that the floor outside the shower was not wet at the time of the fall[,] the unit manager was directed to review the areas outside the shower entrance/exit in the event there was a water concern that should be addressed by maintenance." *Id.* ¶ 22.

Warden Guadarrama's "understanding is that there are occasional leaks from the roof in the Walker Building during significant storms, and facilities maintenance staff is tasked with addressing those issues." *Id.* ¶ 26. According to Warden Guadarrama, "DOC unit staff and/or maintenance addresses leaks that may arise by putting up warning signs or capturing water in a receptacle[,]" and "the DOC facilities management office has a contractor on call should there be a roofing issue that the maintenance staff cannot handle." *Id.* ¶¶ 27–28. Further, "[u]nit managers are also responsible to address as necessary any water issue and place appropriate warnings should they be needed in any particular unit or area." *Id.* ¶ 29.

The plaintiff submitted a Level 1 grievance in December of 2023 regarding the slip-and-fall incident near the shower. *Id.* ¶ 23. Warden Guadarrama "upheld that grievance[,] noting that non-slip mats had been ordered." *Id.* ¶ 24. The plaintiff also submitted a second Level 1 grievance seeking preservation of video. *Id.* ¶ 25. That grievance was denied. *Id.* The plaintiff did not appeal the denial of that grievance. *Id.* ¶ 62. Prison officials transferred the plaintiff from the Walker building to the MacDougall building "over one year" ago. *Id.* ¶ 7. The plaintiff has not complained of any roof leaks in the MacDougall building since his transfer. *See id.* ¶ 8.

4

## II. LEGAL STANDARD

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.,* 875 F.3d 107, 113-14 (2d Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at 113-14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In reviewing the summary judgment record, a court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013). The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). He cannot "rely on conclusory allegations or unsubstantiated speculation but must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 34 (2d Cir. 2015) (quotation marks and citation omitted).

Although the Court is required to read a self-represented "party's papers liberally and interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*,

224 F.3d 33, 41 (2d Cir. 2000).

### III. DISCUSSION

The defendants now move for summary judgment, arguing that the plaintiff failed to exhaust his administrative remedies, that his claim fails on the merits, and that the defendants are entitled to qualified immunity. Def. MSJ, ECF No. 29 at 1. The Court discusses each ground in turn.

#### A. Exhaustion

The defendants first argue that the plaintiff failed to exhaust his administrative remedies. *See id.* The Prison Litigation Reform Act ("PLRA") requires a prisoner pursuing a federal lawsuit to exhaust available administrative remedies before a court may hear his case. *See* 42 U.S.C. § 1997e(a) (providing in pertinent part that "[n]o action shall be brought with respect to prison conditions under section 1983 ... or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted"); *see also Ross v. Blake*, 578 U.S. 632, 635 (2016). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Prisoners "cannot satisfy the PLRA's exhaustion requirement solely by ... making informal complaints" to prison officials. *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007); *see also Day v. Chaplin*, 354 F. App'x 472, 474 (2d Cir. 2009) (summary order) (affirming grant of summary judgment for failure to exhaust administrative remedies and stating that informal letters sent to prison officials "do not conform to the proper administrative remedy

procedures"). Instead, the PLRA requires "proper exhaustion," meaning the inmate must use all steps required by the administrative review process applicable to the institution in which he is confined. *Jones v. Bock*, 549 U.S. 199, 217–18 (2007); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion, which "is mandatory," necessitates "using all steps that the [government] agency holds out, and doing so properly"). "Compliance with prison grievance procedures … is all that is required by the PLRA to 'properly exhaust'" because "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* at 218.

Here, the plaintiff "compli[ed] with prison grievance procedures," *id.*, by submitting a Level 1 grievance in December of 2023 regarding the slip-and-fall incident near the shower. Def. L. R. 56(a)(1), ECF No. 29-2 ¶ 23. Warden Guadarrama "upheld" that grievance. *Id.* ¶ 24. When a grievance is upheld, "[t]he request for administrative remedy is granted." Aff. Walker, Ex. A, ECF No. 29-4 at 11 (containing Administrative Directive 9.6(3)(i)). Because a prisoner is not required to appeal an upheld grievance, *see Abney v. McGinnis*, 380 F.3d 663, 669 (2d Cir. 2004) (noting "it would be counterintuitive to require inmates who win during the grievance process to appeal their victories"), the plaintiff exhausted all remedies "available" to him. *See* 42 U.S.C. § 1997e(a); *see also Abney*, 380 F.3d at 669 (prisoner who had "repeatedly obtained favorable rulings on his grievances" but did not receive relief from these rulings "fully exhausted [his] available remedies").

The defendants do not argue that the plaintiff failed to "[c]ompl[y] with prison grievance procedures," *Jones*, 549 U.S. at 218, by failing to appeal his upheld grievance. Instead, they argue that the plaintiff failed to exhaust his administrative remedies because the upheld

7

grievance "makes no reference to the roof, to defendant Guadar[r]ama[,] or to defendant Quiros." Def. MSJ Mem., ECF No. 29-1 at 13. But "a grievance need only alert the prison to the nature of the wrong for which redress is sought." *Edwards v. Arocho*, 125 F.4th 336, 347 (2d Cir. 2024) (cleaned up). In this way, a grievance is "similar to 'notice pleading' in that it need only object intelligibly to some asserted shortcoming, and adequately describe the alleged misconduct[.]" *Id.* (cleaned up). "The grievant is under no obligation to lay out the facts, articulate legal theories, or demand particular relief," *id.* (internal quotation marks omitted), so long as the grievance is not "so vague as to preclude prison officials from taking appropriate measures to resolve the complaint internally." *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006).

The plaintiff's grievance states that he "slipped [and] fell in the shower area [and] was injured" and "would like for [the] shower to be properly safe from water spreading into the day room common area [t]o prevent any [and] all future incidents." Aff. Walker, Ex. B, ECF No. 29-4 at 23. While the grievance does not reference the roof leak as the source of the water or any person as the responsible party, the content of plaintiff's grievance, at minimum, is not "so vague as to preclude prison officials from taking appropriate measures to resolve the complaint internally." *Brownell*, 446 F.3d at 310; *see also* Def. L. R. 56(a)(1), ECF No. 29-2 ¶ 24 (stating that "Guadarama upheld that grievance[,] noting that non-slip mats had been ordered"). The content of the grievance was adequate to put the defendants on notice of the claims against them. *See Burrell v. Quiros*, No. 3:21-CV-393 (KAD), 2023 WL 8527176, at *6 (D. Conn. Dec. 8, 2023). Because the plaintiff exhausted his administrative remedies, summary judgment will not enter on this ground.

### B. Merits

The defendants' merits argument consists of three components: that (1) the plaintiff's request for injunctive relief is now moot, Def. MSJ Mem., ECF No. 29-1 at 3; (2) Warden Guadarrama was not personally involved in the alleged constitutional violation, *id.* at 14; and (3) the evidence insufficiently supports a Fourteenth Amendment claim. *Id.* at 15. The Court addresses each argument in turn.

#### i. Request for injunctive relief

The plaintiff's amended complaint sought "injunctive and prospective relief to remedy said reckless disregard and deliberate indifference to facility care and integrity." Am. Compl., ECF No. 14 at 6. The Court permitted the plaintiff to pursue this injunctive relief from the defendants in their official capacities. IRO Am. Compl., ECF No. 15 at 9. The defendants now maintain that the plaintiff's request for injunctive relief is moot in light of the plaintiff's transfer from the Walker building to the MacDougall building within the MacDougall-Walker complex. *See* Def. MSJ Mem., ECF No. 29-1 at 3.

While true that "an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility," *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006), the plaintiff's transfer from the Walker building to the MacDougall building does not render his request for injunctive relief moot for two reasons. First, Walker and MacDougall are two buildings within the same MacDougall-Walker "facility," supervised by the same warden. *See* Def. L. R. 56(a)(1), ECF No. 29-2 ¶ 14 (noting that "MWCI is a level 4/5 facility comprised of two separate buildings – MacDougall and Walker"); *id.* ¶ 12 (noting that "Guadarrama currently holds the position of Warden of MacDougall-Walker Correctional

9

Institution 'MWCI'"). Thus, a prisoner's transfer from one building to another within the same facility does not constitute a "transfer from a prison facility." *Salahuddin*, 467 F.3d at 272.

Second, if a prisoner's complaints about his conditions of confinement are not specific to one facility, his transfer to another facility will not render his request for injunctive relief moot. *See Diaz v. Kopp*, 146 F.4th 301, 304–05 (2d Cir. 2025) (holding that habeas petition challenging prison conditions placing petitioner at risk of contracting COVID-19 was not rendered moot by his transfer to another prison because petitioner "did not claim that his complaints were specific to [a specific prison] and could be remedied by his transfer to another facility"). The plaintiff's amended complaint seeks to remedy "reckless disregard and deliberate indifference to facility care and integrity." Am. Compl., ECF No. 14 at 6. The plaintiff's reference to "facility" is ambiguous enough to include either building in the MacDougall-Walker complex. Because, on summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant," *Caronia*, 715 F.3d at 427, there is a genuine issue of material fact as to whether the plaintiff's request for injunctive relief is now moot. Accordingly, summary judgment may not enter on this ground, either.

### ii. Personal Involvement of Warden Guadarrama

To seek damages from a prison official, a plaintiff must show a specific defendant's "personal involvement" in a constitutional violation. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (noting that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."). "Personal involvement," the Second Circuit has said, means either direct participation, such as "personal participation by one who has

knowledge of the facts that rendered the conduct illegal," or indirect participation, such as "ordering or helping others to do the unlawful acts." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (citation omitted). When a defendant is a supervisory official, "a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability." *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020). A plaintiff may not hold a defendant liable for a constitutional violation committed by another defendant solely based on his or her "high position of authority in the prison system." *Wright*, 21 F.3d at 501.

On initial review, the Court found the plaintiff's allegations of Warden Guadarrama's personal involvement to be thin, but it nonetheless concluded that "a prison warden is likely the most appropriate official to sue concerning the living conditions of the prisoners he oversees." IRO Am. Compl., ECF No. 15 at 8 (citing *Rogers v. Lamont*, No. 3:21-CV-1722 (OAW), 2022 WL 16855969, at *4 (D. Conn. Nov. 10, 2022) (where plaintiff sufficiently alleged warden and deputy warden's personal involvement on conditions of confinement claim because they directly oversaw prison facility operations)). The Court surmised that "[e]ven if the evidence eventually demonstrates that Warden Guadarrama is not the responsible person, he is the appropriate party to this action at this stage in the litigation." *Id.* at 9 (citing *Davis v. Kelly*, 160 F.3d 917, 921 (2d Cir. 1998) ("[C]ourts have pointed out the appropriateness of maintaining supervisory personnel as defendants in lawsuits stating a colorable claim until the plaintiff has been afforded an opportunity through at least brief discovery to identify the subordinate officials who have personal liability.")).

Warden Guadarrama now maintains that summary judgment should enter on the

plaintiff's claim for damages because "[t]he undisputed facts following discovery reveal that Guadar[r]amma had only been the warden for a month at the time of the fall." Def. MSJ Mem., ECF No. 29-1 at 14. Because I conclude that the Fourteenth Amendment claim fails for lack of evidence, I decline to address this issue.

### iii. Insufficiently Supported Fourteenth Amendment Claim

The Court permitted the plaintiff to pursue a Fourteenth Amendment deliberate indifference claim related to the plaintiff's conditions of confinement. IRO Am. Compl., ECF No. 15 at 7. To state a conditions-of-confinement claim under the Fourteenth Amendment, a plaintiff must allege facts satisfying two components, one objective and one subjective. First, the plaintiff must allege facts showing that "the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). To determine whether a condition was "sufficiently serious," the Court must "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993) (emphasis original). "In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Id.*

Second, the plaintiff must allege facts showing that "the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35. "A detainee must prove that an official acted intentionally or

12

recklessly, and not merely negligently." *Id*.

"It is well-established in this Circuit that allegations of wet floor conditions that cause a prisoner to slip and fall, standing alone, do not satisfy the first prong of a conditions of confinement claim," *Lovelady v. Otis Bantum Corr. Facility Rikers Island*, No. 24-CV-9646 (KMW), 2025 WL 2201064, at *2 (S.D.N.Y. July 29, 2025) (internal quotation marks omitted) (collecting cases), regardless of whether such a claim is evaluated under the Eighth Amendment or the Fourteenth Amendment. *See Quint v. Lamont*, No. 3:22-CV-1263 (VAB), 2022 WL 17487978, at *4 (D. Conn. Dec. 6, 2022) ("For Fourteenth Amendment claims, the Second Circuit applies the same standard that applies to Eighth Amendment claims in deciding whether conditions of confinement amount to an objective deprivation of the right to due process" (citing *Darnell*, 849 F.3d at 30)).

When considering a conditions-of-confinement claim alleging that a plaintiff "stepped into a snowbank and slipped on concealed ice, permanently injuring his ankle and shoulder," the Second Circuit concluded that the plaintiff's complaint "did not make any claims of exceptional circumstances that would elevate the Green Haven yard conditions beyond the typical level of danger presented by a slippery sidewalk or a wet floor." *McCray v. Lee*, 963 F.3d 110, 114, 120 (2d Cir. 2020). The *McCray* court accordingly affirmed dismissal of the plaintiff's conditions-of-confinement claim under Rule 12(b)(6). *Id.* at 120–21.

This Court later acknowledged in *Branch v. Guadarrama*, No. 3:24-CV-00536 (MPS), 2024 WL 3342991 (D. Conn. July 9, 2024), "that slip-and-fall claims are seldom viewed as rising to constitutional dimension, but could if 'exceptional circumstances' elevated the danger of a condition beyond that typically presented by a slippery sidewalk or a wet floor." *Id.* at *3

(cleaned up) (quoting *McCray*, 963 F.3d at 115, 120). As such, this Court and other courts in this District have recognized conditions-of-confinement claims where the plaintiff has alleged "exceptional circumstances." *See*, *e.g.*, *id.* (slippery floor caused by leaking roof documented long before plaintiff's slip and fall could constitute "exceptional circumstance"); *Johnson v. Rowe*, No. 3:24-CV-617 (MPS), 2025 WL 1786083, at *4 (D. Conn. June 27, 2025) (puddle of water outside plaintiff's cell that was ignored by correctional officer could constitute "exceptional circumstance"); *Abernathy v. Comm'r of Correction*, No. 3:20-CV-00628 (VAB), 2021 WL 1240018, at *7 (D. Conn. Apr. 2, 2021) (correctional staff ignoring waxed wet floor that was extremely slippery could be "exceptional circumstance"). Thus, the question here is whether there is a genuine dispute of material fact as to an "exceptional circumstance" that would elevate the plaintiff's ordinary slip-and-fall to an event of constitutional dimension.

Where courts have found "exceptional circumstances" to exist, prison officials had some knowledge of a wet floor before the plaintiff slipped. *See Branch*, 2024 WL 3342991, at *3 (where "the leak was documented long before [plaintiff] slipped"); *Johnson*, 2025 WL 1786083, at *2 (where correctional officer "had conducted his tour several times but never acted to remedy the 'mess' caused by the leaking water bag" outside plaintiff's cell); *Abernathy*, 2021 WL 1240018, at *7 (where correctional officers "consciously ignored a risk of harm posed by a potentially extremely slippery floor for two days"). These cases stand in contrast to the Second Circuit's decision in *McCray*, in which the plaintiff merely alleged he slipped on ice that was concealed beneath "waist-high" snow in the prison yard without alleging prison officials knew of the dangerous condition before the plaintiff slipped. *McCray*, 963 F.3d at 114. Thus, the "knowledge of the dangerous condition and refusal to remedy it" is the "exceptional

14

circumstance" that elevates a slippery floor "beyond the typical level of danger presented by a slippery sidewalk or a wet floor." *Johnson*, 2025 WL 1786083, at *4 (quoting *McCray*, 963 F.3d at 120 (quotation marks omitted)).

A prison officials' knowledge of the risk that a wet floor may present to an inmate "may be proven from the very fact that the risk was obvious." *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (internal quotation marks omitted). In its initial review order, the Court "infer[red] from the presence of the bucket used to collect water falling through the ceiling that the risk was obvious to prison officials" and that "prison officials recklessly failed to act with reasonable care to mitigate this obvious risk." IRO Am. Compl., ECF No. 15 at 6 (citing Am. Compl., ECF No. 14 ¶ 4 (referring briefly to "four separate ceiling leaks, one having a cleaning bucket to catch water")). But the only evidence that the puddle came from a roof leak at all (and not some other source, like the shower next to the puddle) is plaintiff's conclusory and unsupported allegations in the verified amended complaint. *See* Am. Compl., ECF No. 14 ¶ 4. These "unsupported allegations do not create a material issue of fact." *Weinstock*, 224 F.3d at 41.

In any event, no evidence has been submitted that Warden Guadarrama knew of the leak but refused to do anything about it. The plaintiff does not even allege this in his amended complaint. *See* Am. Compl., ECF No. 14 ¶¶ 1–9. And while true that Warden Guadarrama acknowledged that "there are occasional leaks from the roof in the Walker Building during significant storms," Guadarrama Aff., ECF No. 29-3 ¶ 18, there is no evidence that he was aware of standing water outside the shower area before the plaintiff's fall. Because there is no genuine dispute of material fact as to whether Warden Guadarrama had knowledge of a roof leak causing

15

a puddle but refused to remediate it, summary judgment must enter on this ground. *See Vidal v. Annucci*, No. 22-2729, 2024 WL 1003532, at *1 (2d Cir. Mar. 8, 2024) (summary order) (affirming summary judgment on conditions-of-confinement claim where parties adduced no evidence that supervisory defendants knew of the freezing temperatures in plaintiff's housing unit).

### C. Qualified Immunity

Lastly, the defendants maintain that they are protected by qualified immunity. Def. MSJ, ECF No. 29 at 1. Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). Qualified immunity "affords government officials 'breathing room' to make reasonable—even if sometimes mistaken—decisions." *Distiso v. Cook*, 691 F.3d 226, 240 (2d Cir. 2012) (quotation omitted). "The qualified immunity standard is forgiving and protects all but the plainly incompetent or those who knowingly violate the law." *Grice v. McVeigh*, 873 F.3d 162, 166 (2d Cir. 2017) (internal quotation marks omitted).

"In determining whether state actors are entitled to qualified immunity under federal law, [the Court] consider[s] two factors: (1) whether the facts presented make out a violation of a constitutional right; and (2) whether the right at issue was clearly established when it was allegedly violated." *Torcivia v. Suffolk Cnty., New York*, 17 F.4th 342, 367 (2d Cir. 2021) (internal quotation marks omitted). "Only Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant in deciding whether a right is clearly established." *Id.* (internal quotation marks omitted). "In evaluating these two factors, [the Court] look[s] to the

16

specific context of the case at bar rather than broad general propositions." *Id.* (internal quotation marks and brackets omitted). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (internal quotations omitted). There is no requirement that precedent be directly on point, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

Neither the Second Circuit nor the Supreme court has ever held that a mere slip-and-fall amounts to a constitutional violation. *See McCray* 963 F.3d at 120 (affirming dismissal of complaint insofar as it sought relief "on the basis that the combination of the slippery conditions in the recreation yards" and a sergeant's order to go into the yard violated plaintiff's rights under the Eighth Amendment). Accordingly, the right at issue could not have been "clearly established when it was allegedly violated." *Torcivia*, 17 F.4th at 367. As such, summary judgment must enter on this ground, too.

## IV.     CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment [ECF No. 29] is **GRANTED**. The Clerk is directed to enter judgment and close this case.

**SO ORDERED** this 5th day of January 2026 at Hartford, Connecticut.

/s/
Michael P. Shea
United States District Judge